UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re: ERIC G. DIETLEIN AND COLLEEN M. DIETLEIN | Case No. 3:14-cv-00567-MMD |
| Debtors. | ORDER |
| ERIC G. DIETLEIN, COLLEEN M. DIETLEIN, | |
| Appellants, | |
| v. | |
| WILLIAM R. DIETLEIN, NORA L. CHRISTENSEN, | |
| Appellees. | |

**I.     SUMMARY**

Appellants-Debtors Eric G. Dietlein ("Eric") and Colleen M. Dietlein (collectively, "Appellants") appeal from the decision of the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court") converting their bankruptcy case from a Chapter 13 to a Chapter 7 matter. (ECF No. 10-21.) The Court has reviewed Appellants' opening brief (ECF No. 7), William Dietlein ("Bill") and Nora Dietlein Christensen's ("Nora") (collectively, "Appellees") response (ECF No. 8), and Appellants' reply (ECF No. 11).

The Court has also considered the corresponding exhibits (ECF Nos. 7-1; 7-2; 10-1 through 10-38 (exhibits to answering brief)). Notably, the exhibits the Court has reviewed includes, *inter alia*: the motion to convert from Chapter 13 to Chapter 7 ("Conversion Motion") Appellees filed in the Bankruptcy Court (ECF No. 10-17); Appellants' objection to

1 the Conversion Motion (ECF No. 10-18); Appellees' reply (ECF No. 10-19); Appellants'

2 supplement to their objection (ECF No. 10-20); the Bankruptcy Court's order converting

3 the case (ECF No. 10-21); and the transcript of the Bankruptcy Court proceedings on the

4 Conversion Motion ("Tr.") (ECF No. 10-1).

5      For the reasons explained below, the Court affirms the Bankruptcy Court's decision

6 upon finding it is supported by the record before this Court.

7 **II.    RELEVANT BACKGROUND**

8      Appellant Eric and Appellees are siblings. Appellees filed the Conversion Motion in

9 June 2014. (ECF No. 10-17.) At that time, Appellees and Eric had been in "lengthy

10 disputes" regarding their trust assets. (ECF No. 10-1 at 60.) The core disputes between

11 the parties regard what to do with related trusts (collectively, "the Trust") established by

12 the siblings' parents, Robert W. Dietlein ("Robert") and Eleanora J. Dietlein ("Eleanora").

13 (ECF No. 8 at 7; ECF No. 7 at 29; ECF No. 10-2 at 3.)[1]

14      Shortly before Robert's death in 1992, he and Eleanora executed the Robert W.

15 and Eleanora J. Dietlein Revocable Trust – 1992. (*Id.*) The Trust provided for the creation

16 of three "sub-trusts" upon Robert's death: two irrevocable sub-trusts (named the Family

17 Trust and the Marital Income Trust)—to receive Robert's half of their community property

18 and all his separate property; and another revocable sub-trust, the Survivor's Trust, to

19 receive Eleanora's half of their community property and all her separate property. (*Id.*)

20      In October 2004, Eleanora executed the Eleanora J. Dietlein Trust dated October

21 25, 2004, ("Eleanora J. Dietlein Trust") to replace the Survivor's Trust. (*Id.*; ECF No. 10-3

22 at 3.) Eleanora further amended the Eleanora J. Dietlein Trust on November 16, 2007, by

23 executing the Amended and Restated Declaration and Agreement For The Eleanora J.

24 Dietlein Trusts. (ECF No. 10-3 at 3; ECF No. 7 at 29.) It is undisputed that thereafter Eric

25 began exercising control over the Trust's assets, and at some point, began using the

26 assets for personal reasons. (ECF No. 10-2 at 4; ECF No. 10-6.)

27 ///

---

28     [1]The facts provided regarding the creation and distribution of the Trust are undisputed.

1  Appellants filed for bankruptcy in October 2009. (ECF No. 10-2 at 4.) Eleanora died

2  in 2010. (*Id.*) In March 2013, a trustee that had been appointed to Appellants' Chapter 13

3  case filed a motion to dismiss Appellants' Chapter 13 case "based on delinquency and

4  because [Appellants] had not provided copies of their 2009, 2010, 2011, and 2012 tax

5  returns." (ECF No. 10-31 at 4.)

6  In the 2014 Conversion Motion Appellees alleged ten "causes" supporting a finding

7  of conversion (ECF No. 10-17 at 3, 12) culminating in their overarching position that

8  Appellants had acted in "bad faith" (ECF No. 10-1 at 9) throughout the Chapter 13 case.

9  Appellees asserted: (1) failure to disclose a material change in employment and/or

10  compensation; (2) failure to disclose pre-petition income; (3) failure to properly identify all

11  trust assets; (4) misrepresentation of the value of trust assets; (5) failure to update

12  schedules to reflect vesting of trust interests and expiration of spendthrift provision; (6)

13  that, relatedly, Eric cannot argue the spendthrift provisions protect him; (7) failure to

14  identify the trust or movants as creditors; (8) intentionally delaying distribution of trust

15  assets; (9) failure to disclose unliquidated claims; and (10) failure to disclose bankruptcy

16  status in state court proceedings. (*See generally* ECF No. 10-17.)

17  The paramount theory underlying Appellees' Conversion Motion was that Eric

18  "undervalued or [had] not disclosed" his assets—including the Trust assets. Appellees

19  posited that if the assets "were taken over by a Chapter 7 trustee, [they] could be liquidated

20  and provide more money to creditors." (ECF No. 10-1 at 31.) When asked about Appellee's

21  theory at a July 31, 2014 hearing held regarding the Conversion Motion, Eric appeared to

22  be most concerned about the Trust's ability to recover the most money possible from a

23  lawsuit he had filed against Bill[2] as Trust representative. (ECF No. 10-1 at 25, 31–33, 54–

24  55.)

25  ///

26  ///

---

27  [2]Appellees established that this lawsuit was dismissed and therefore "[n]either

28  Appellant nor a Chapter 7 trustee could ever pursue the claims against NAFCO USA, LLC." (ECF No. 8 at 11–12; ECF No. 10-23; ECF No. 10-24; ECF No. 10-25; ECF No. 10-26.)

1    Ultimately, the Bankruptcy Court decided to grant the Conversion Motion (ECF No.

2    10-21) based upon its oral finding of all but one of the asserted causes—cause (8)

3    intentionally delaying distribution of trust assets (*id.* at 56–61), and that conversion was in

4    the best interest of creditors (*id.* at 61). Appellants timely appealed the decision. (ECF No.

5    1 at 1; ECF No. 1-2 at 2.) Appellees then timely elected to have this Court hear the appeal.

6    (ECF No. 1-3.) The appeal was transferred and filed with this Court on November 4, 2014.

7    (ECF No. 1-4.)

8    **III.    STANDARD OF REVIEW**

9        The Court reviews "for abuse of discretion the bankruptcy court's ultimate decisions

10   to deny a request for dismissal of a Chapter 13 case . . . and to convert a case from

11   Chapter 13 to Chapter 7. *In re Rosson*, 545 F.3d 764, 771 (9th Cir. 2008) (citations

12   omitted). A bankruptcy court's conclusions of law are reviewed *de novo*, "including its

13   interpretation of the Bankruptcy Code," and its factual findings are reviewed for clear error.

14   *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005); *In re Salazar,* 430 F.3d 992, 994 (9th Cir.

15   2005). The bankruptcy court's factual findings are clearly erroneous only if the findings

16   "leave the definite and firm conviction" that the bankruptcy court made a mistake. *In re*

17   *Rains*, 428 F.3d at 900. "A bankruptcy court abuses its discretion if it applies the law

18   incorrectly or if it rests its decision on a clearly erroneous finding of a material fact." *In re*

19   *Brotby*, 303 B.R. 177, 184 (B.A.P. 9th Cir. 2003). In reviewing a bankruptcy court's

20   decision, this Court ignores harmless errors. *In re Mbunda*, 484 B.R. 344, 355 (B.A.P. 9th

21   Cir. 2012). The Court may affirm the bankruptcy court's decision "on any ground fairly

22   supported by the record." *In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009).

23   **IV.    DISCUSSION**

24       In their opening brief on appeal, Appellants put forth numerous "issues" they deem

25   related to purported findings and rulings the Bankruptcy Court made. (*See generally* ECF

26   No. 7.) At times, Appellants argue their various "issues" without citation to  authority

27   regarding either things they claim the Bankruptcy Court should have done, or things they

28   ///

claim they were not obligated to do.[3] In any event, all these "issues" Appellants highlight are subsumed into a single dispositive issue—whether the Bankruptcy Court erred or abused its discretion in converting Appellants' Chapter 13 case to a Chapter 7 case. The record supports affirmance.

Title 11 of the bankruptcy codes pertaining to "conversion or dismissal" provides:

> Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and *after notice and a hearing*, the court *may* convert a case under this chapter[--chapter 13--] to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and estate, for *cause*, including—
>
> . . .

11 U.S.C. § 1307(c). Subsection c goes on to list eleven types of 'cause' (*id.* at § 1307(c)(1)–(11)), but that list is "nonexclusive." *In re Nelson*, 343 B.R. 671, 674 (B.A.P. 9th Cir. 2006). "Section 1307(c) . . . establishes a two-step analysis for dealing with questions of conversion and dismissal. First, it must be determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" *Id.* at 675.

The Ninth Circuit has recognized that a debtor's right to voluntarily dismiss a Chapter 13 case under § 1307(b) is not absolute, but rather "is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad faith conduct or 'to prevent an abuse of process.'" *In re Rosson*, 545 F.3d at 774–74 (quoting 11 U.S.C. § 105(a)); *see also Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (quoting 11 U.S.C. § 105(a)) (noting that the Bankruptcy Code specifically grants bankruptcy judges "broad authority . . . to take any action necessary 'to prevent an abuse of process'" and

///

---

[3]For example, without citation to authority, Appellants claim the Bankruptcy Court prejudiced them merely by not providing an evidentiary hearing—to further expound on their arguments—beyond the hearing on the Conversion Motion. (ECF No. 7 at 9, 30–31; ECF No. 11 at 19.) Appellants also claim without legal support that Eric had no obligation to disclose his "personal" bankruptcy status in a case where he was involved as manager of the Trust. (ECF No. 7. at 20).

1  acknowledging that bankruptcy courts "routinely treat dismissal of prepetition bad-faith

2  conduct as implicitly authorized by the words 'for cause'").

3       Courts assess a 'cause' of bad faith based on the "totality of the circumstances." *In*

4  *re Leavitt* ("*Leavitt*"), 171 F.3d 1219, 1224 (9th Cir. 1999) (internal quotation and citation

5  omitted). While in *Leavitt* the Ninth Circuit identified certain factors that "should" be

6  considered in making a bad faith determination (*see id.*), the Ninth Circuit later

7  acknowledged that in *Marrama* the Supreme Court "declined to decide 'with precision what

8  conduct qualifies as bad faith,' [and] 'emphasize[d] that the debtor's conduct must, in fact,

9  be atypical,'" *In re Rosson*, 545 F.3d at 73 (quoting *Marrama*, 549 U.S. at 375 n.11).

10  Moreover, a finding of bad faith "does not require fraudulent intent by the debtor[,]" *Leavitt*,

11  171 F.3d at 1224, and bad faith is a finding of fact reviewed for clear error*, id.* at 1222–23;

12  *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994) (per curiam).

13       Without need to consider all the Bankruptcy Court's findings, the record here

14  provides ample support for the Bankruptcy Court's implicit finding that Appellants'—

15  particularly Eric's—conduct in the Chapter 13 case amounted to "atypical" bad faith debtor

16  conduct. This outcome is reinforced by the fact that at no point did Appellants supplement

17  their bankruptcy petition to correct omissions or provide additional information. *See* Fed

18  R. Bankr. P. 1007(h) (stating that a debtor's duty to amend their schedules continues until

19  a discharge order is entered).

20       Appellant Eric acknowledged at the hearing on the Conversion Motion that he owed

21  the Trust money at the time Appellants filed for bankruptcy, but Appellants did not list the

22  Trust as a creditor on Appellants' Chapter 13 bankruptcy petition schedules. (ECF No. 1

23  at 34; *see also* ECF No. 10-6.) Eric also indicated that he knew the Trust would become

24  fully vested upon Eleanora's death (ECF No. 10-1 at 21)—yet he failed to amend the

25  schedules in his bankruptcy case upon her death in 2010 to indicate that the Trust assets

26  were then available to him.

27       Moreover, the name of the trust he actually provided in his schedules was incorrect.

28  (*Id.* at 58.) Nor did he specifically note that he was "a one-third beneficiary of one trust and

one-half beneficiary of another trust." (*Id.*) In his opening brief on appeal, Eric admits that he—through his attorney—listed the Trust only as the "Robert and Eleanora Dietlein Spendthrift Trust." (ECF No. at 30.) Of course, this does not accurately reflect either the Trust's name, or any of the "sub-trusts" therein, *see supra* Section II. However, Eric suggests this listing was not duplicitous because there are many ways he could have scheduled the Trust by name and attribute. (*Id.*) He provides no authority to support this "could have" statement. (*Id.*) In their response, Appellees argue that the exact name of the Trust was important because a creditor searching by the name Appellants provided on the Chapter 13 petition "would reveal no results, whereas searching with the proper name would yield several results." (ECF No. 8 at 17.) The Court agrees with Appellees. The Bankruptcy Court did as well. (*See* ECF No. 10-1 at 58 (Tr. at 57:23-25).)

The Bankruptcy Court also found that Eric did not disclose a material change in employment and/or compensation—by failing to disclose his "gross income" as required by the schedules. (*Id.* at 57.) Appellants' schedules disclose Eric's average income as $4,419.75 per month from the operation of a business. (ECF No. 10-27 at 2 (Chapter 13 Stat.).) Later in November 2011, Eric entered into a working agreement with Karlon J. Kidder, Esq. for a salary of $7,000 per month. (ECF No. 10-28.) Appellants provided a 2013 1040 tax form associated with work at Kidder Law Group, LTD ("Kidder") to their Chapter 13 trustee evidencing a total *business gross income* of $34,750.00. (ECF No. 10-31.) Appellants argue on appeal, as Eric did at the conversion hearing, that this "gross income" constitutes income after purported allowable business deductions—suggesting he was not an employee of Kidder, and was at all relevant times an independent contractor. (ECF No. 7 at 11–17; ECF No. 10-1 at 11–15, 51–53.) The Bankruptcy Court found Eric's explanation of gross income unconvincing and indicated having concluded that the schedules unambiguously required disclosure of "gross income." (ECF No. 10-1 at 11, 58.) Moreover, Eric's claim on appeal that his "gross income" appropriately reflected deductions from business income has been muted by judicial estoppel. (*See* ECF No. 10-15 (*Eleanora J. Dietlein Trust, et al. v. Am. Home Mortg. Inv. Corp.*, No. 3:11-CV-00719-

7

1  LRH-VPC) at 22 (finding "Eric was Mr. Kidder's employee. Eric was not an independent
2  contractor.").)[4]

3  These omissions and inaccuracies support the conclusion that Appellants
4  essentially forfeited any right to continue under Chapter 13. They also support the
5  Bankruptcy Court's exercise of its authority to dissuade "bad faith" or abuse of the
6  bankruptcy process by converting the case to a Chapter 7 case and placing it under the
7  purview of a Chapter 7 trustee to protect the relevant creditors' interests—including the
8  Trust.[5]

9  Even if the Bankruptcy Court erred in deciding to convert the case and appoint a
10  Chapter 7 trustee—and this Court finds it did not—Appellants arguably invited the error.
11  "Under the invited error doctrine, an error that is caused by the actions of the complaining
12  party will cause reversal "only in the most exceptional situation." *U.S. v. Schaff*, 948 F.2d
13  501, 506 (9th Cir. 1991) (internal quotation and citations omitted). Such an "exceptional
14  situation" exists where, for example, the complaining party has demonstrated that
15  "reversal is necessary to preserve the integrity of the judicial process or to prevent a
16  miscarriage of justice." *Id.* (citation omitted). That is not the case here.

17  As indicated, Eric's primary concern during the conversion hearing appeared to be
18  that if the case was converted a Chapter 7 trustee would not zealously pursue the Trust's
19  lawsuit against Bill, to ensure that creditors obtain the greatest possible recovery. (ECF
20  No. 10-1 at 31–33, 54–55.) The Bankruptcy Court was unpersuaded by this argument and
21  stated that Eric's assumption about what a Chapter 7 trustee might do was "erroneous."
22  (*Id.* at 33.) Eric subsequently conceded that having a Chapter 7 trustee—who would
23  ///

---

24  [4]In the Appellants' reply brief, they highlight that this order by Magistrate Judge
25  Valerie Cooke was up for appeal. (ECF No. 11 at 13.) However, the Court takes judicial
   notice of the fact that the appeal has since been dismissed for lack of jurisdiction. (*See*
26  3:11-cv-00719-LRH-VPC at ECF Nos. 105, 113, 137.)

27  [5]Notably, the trustee assigned to Appellants' Chapter 13 case at the time of the
   modification, opined that "[t]o the extent the court determines that the [Appellants] have
   been deceptive, concealed assets or withheld material financial information that frustrated
28  the proper administration of their Chapter 13 case, the case should either be dismissed or
   converted." (ECF No. 10-31 at 3.)

8

1 pursue asset recovery as he would—would be a "good thing." (*Id.*) He specifically stated

2 that

3 If that Chapter 7 trustee was willing to actually get the most out of what is
there, I would be happy about it. If they weren't, I'd be very unhappy about
4 it . . . I do know that my brother and sister and I can't agree on anything and
I do believe that a trustee needs to take charge.
5

6 (*Id.* at 54 (Tr. at 53:6-18).)

7 　　Upon finding causes existed for the case to be converted—presumably as opposed

8 to dismissing the case outright—the Bankruptcy Court provided two reasons for

9 concluding that it was in the best interest of creditors to appoint a Chapter 7 trustee. First,

10 "it appears . . . nothing can be accomplished as long as [the siblings] are battling." (ECF

11 No. 10-1 at 61.) Second, Eric "[c]ertainly . . . indicated that he thought a trustee could do

12 some better"—albeit he "quibble[d]"—"saying that the trustee would only be appropriate if

13 he could direct the trustee," but "[t]hat's not appropriate in this case, or any case." (*Id.*)

14 Therefore, this Court finds that Eric essentially invited the Bankruptcy Court to make the

15 decision it did, and thus it is incongruous for Eric to now seek reversal of that decision.[6]

16 *See Warren*, 568 F.3d at 1116 (noting a bankruptcy court's decision may be affirmed "on

17 any ground fairly supported by the record").

18 　　For the stated reasons, the Court affirms the Bankruptcy Court's decision

19 converting Appellants' Chapter 13 case to a Chapter 7 case.

20 **V.　CONCLUSION**

21 　　The Court notes that the parties made several arguments and cited to several cases

22 not discussed above. The Court has reviewed these arguments and cases and determines

23 that they do not warrant discussion as they do not affect the outcome of this appeal.

24 　　It is therefore ordered that the Bankruptcy Court's decision is affirmed. The Clerk

25 of this Court is directed to enter judgment and close the case.

26 ///

27 _____

28 　　[6]Appellants appear to request reversal "in full or in part." (ECF No. 7 at 32.) It seems
infeasible that a decision to convert the case from a Chapter 13 to Chapter 7 may be
reversed in part. Thus, the Court does not address that alternative request.

DATED THIS 28th day of September 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE